### APPEALS OF B. F. SAUL ET AL.[1]

Docket Nos. 3244, 3245, 3652, 3736, 4224, 4826, 4907.

Decided July 31, 1926.

A disposition of stock under the circumstances of this appeal *held* to have been a sale under the provisions of section 202 (a) of the Revenue Act of 1918 and not an exchange of stock for stock under the provisions of section 202 (b) of that Act. *Held, further,* that the fair market value of the right to subscribe for stock of another corporation received as a part of the consideration for

---

[1] The titles and docket numbers of the appeals here decided are: B. F. Saul, No. 3244; Fanny E. Saul, No. 3245; J. Philip Herrmann, No. 3652; Rosina M. May, No. 3736; John H. Ruppert, No. 4224; John J. Hamilton, No. 4826; and G. Percy McGlue, No. 4907.

the stock sold should be included in determining the gain or loss upon such sale.

*Laurence Graves, Esq., John F. McCarron, Esq.,* and *John J. Hamilton, Esq.,* for the petitioners.

*M. N. Fisher, Esq.,* and *L. C. Mitchell, Esq.,* for the Commissioner.

Before LITTLETON, SMITH, and TRUSSELL.

These appeals are from determinations of deficiencies in income tax for the calendar year 1919 as follows:

| | |
|---|---|
| B. F. Saul | $64, 274. 73 |
| Fanny E. Saul | 795. 49 |
| J. Philip Herrmann | 5, 253. 45 |
| Rosina M. May | 661. 55 |
| John H. Ruppert | 1, 932. 35 |
| John J. Hamilton | 158. 21 |
| G. Percy McGlue | 521. 03 |

The issue involved arises as the result of a merger of the Home Savings Bank, a Virginia corporation doing business in the District of Columbia, with the American Security & Trust Co., a District of Columbia corporation, and concerns the question whether the stockholders of the former sold their stock to and purchased certain stock of the latter, or whether the transaction was an exchange of stock for stock.

FINDINGS OF FACT.

The taxpayers are residents of the District of Columbia and, at the time the agreement of March 18, 1919, and other transactions hereinafter mentioned, were entered into, they were each the owner of certain shares of the capital stock of the Home Savings Bank, as follows:

| | Shares |
|---|---|
| B. F. Saul | 479 |
| Fanny E. Saul | 30 |
| J. Philip Herrmann | 50 |
| Rosina M. May | 20 |
| John H. Ruppert | 50 |
| John J. Hamilton | 4 |
| G. Percy McGlue | 10 |

They each reported as a profit in their tax returns the difference between the cost, or the March 1, 1913, value of the Home Savings Bank stock, which is not in dispute, and $400 a share, the amount of cash received by them from the American Security & Trust Co. The transaction, hereinafter described in detail, was one in which these taxpayers deposited their stock with trustees to whom the Trust Company, pursuant to the terms of a written contract, paid

$400,000, which amount was used by the trustees pursuant to the provisions of the contract in the purchase of 4,000 shares of the capital stock of the Trust Company at par, which they distributed to the taxpayers on the basis of four shares for each share formerly owned by them in the Home Savings Bank.

The Commissioner held that in substance the transaction was an exchange of stock for stock within the meaning of section 202(b) of the Revenue Act of 1918 and computed the profit accordingly.

B. F. Saul, president of the Home Savings Bank, hereinafter referred to as the Bank, was approached early in 1919 by the president of the American Security & Trust Co., hereinafter referred to as the Trust Company, with a proposal to merge the Bank with the Trust Company. This proposal was considered and discussed by the directors of the Bank and negotiations followed which resulted in an offer by the Trust Company to take over the assets of the Bank in consideration of the assumption by the Trust Company of the Bank's liabilities, other than its liability to its stockholders, which the Trust Company agreed to satisfy by payment to the stockholders of $400,000 and to permit the stockholders of the Bank to subscribe at par for four shares of its stock for each share of Bank stock owned by them.

The Bank had an authorized and outstanding capital stock of $100,000, consisting of 1,000 shares which were owned by less than 50 stockholders. The offer of the Trust Company was made known to each stockholder of the Bank who was advised that under the proposed arrangement he would be paid cash for his stock at the rate of $400 a share, or, if he so desired, he would be permitted, upon the payment by the Trust Company of the $400 a share, to purchase at par four shares of Trust Company stock for each share of Bank stock owned. Each stockholder evidenced a desire to acquire the Trust Company stock. Thereafter, on March 18, 1919, a formal written agreement was entered into between the Bank, the Bank stockholders, and the Trust Company, as follows:

THIS AGREEMENT, made this 18th day of March, A. D. 1919, by and between the stockholders of the Home Savings Bank, hereinafter referred to as the Stockholders; the Home Savings Bank, a corporation, hereinafter referred to as the Bank; B. Francis Saul, James F. Shea and Howard Moran, as Trustees, hereinafter referred to as the Trustees, and the American Security and Trust Company, hereinafter referred to as the Trust Company; witnesseth:

1. The Stockholders hereby agree as follows:

(a) To deposit with the Trustees hereinbefore named at the time of the signing of this contract, certificates of stock in the Bank then owned by them, assigned in blank to said trustees.

(b) To execute a proxy to the said Trustees to vote the stock so deposited by them at any subsequent meeting of the Stockholders which may be specially

50144°—27——44

called to consider the question of the merger of the Bank and the Trust Company, therein expressly waiving notice of any such meeting, and authorizing said Trustees at such meeting to vote to authorize the Directors of the Bank to pass such resolutions as may be necessary to effect said merger by the transfer of the assets of the Bank, including all of its real and personal property, to the Trust Company.

(c) To authorize said trustees to hold the stock of the Bank so deposited with said Trustees until the delivery to the Trustees by the Trust Company of four thousand (4,000) shares of its capital stock and then to hold the stock of the Bank subject to the direction of the Trust Company.

2. The Bank hereby agrees to call a special meeting of the Stockholders of the Bank for the purposes hereinbefore indicated, and, upon being directed by the Stockholders, to call a special meeting of the Board of Directors, to authorize the transfer of all the assets of the Bank to the Trust Company for and in consideration of the assumption by the Trust Company of all the liabilities of the Bank, other than its liabilities to its stockholders, and for and in consideration of the satisfaction of the interest of its stockholders by the payment of the sum of Four Hundred Thousand ($400,000) Dollars to the Trustees.

3. The said Trustees hereby agree that after said stock of the Bank shall have been delivered to them and after the authorization of the stockholders and Board of Directors of the Bank for the transfer of its assets to said Trust Company and receipt by said Trustees of said sum of Four Hundred Thousand ($400,000) Dollars, and upon delivery by said Trust Company of four thousand (4000) shares of its capital stock to them, they will pay to the Trust Company for said stock the sum of Four Hundred Thousand ($400,-000) Dollars and will hold the stock of the Bank subject to the direction of the Trust Company, and then will thereupon transfer to each stockholder of the Bank four shares of the stock of the Trust Company for each one share of the stock of the Bank delivered by such stockholder.

4. The Trust Company hereby agrees to call a special meeting of the stockholders of said Company for the purpose of increasing its capital stock from Three Million to Three Million Four Hundred Thousand ($3,400,000) Dollars. If the said increase is authorized by the stockholders, a special meeting of the Board of Directors will then be called for the purpose of the issuance of the four thousand (4000) shares of stock authorized to be issued by the stockholders, and for the purpose of authorizing and directing the merger of the Bank and the Trust Company by the transfer of the assets of the Bank to the Trust Company and the assumption by the Trust Company of all the debts and liabilities of the Bank other than liabilities to the stockholders of the Bank, and of the payment of the sum of Four Hundred Thousand ($400,000) Dollars to the Trustees for the Stockholders, and for the purpose of authorizing the transfer of four thousand (4000) shares of the capital stock of the Trust Company issued as aforesaid to said Trustees for the sum of Four Hundred Thousand ($400,000) Dollars.

\*     \*     \*     \*     \*     \*     \*

This agreement was signed by all the stockholders of the Bank, for the Bank by its president, by the trustees for the Bank's stockholders, and by the Trust Company. Its terms were dictated with the intent and for the purpose of complying with and meeting the requirements of the law of the District of Columbia regulating the issuing of stock by trust companies organized thereunder.

The fair market value of the stock of the Trust Company on March 18, 1919, was $220 a share.

On April 14, 1919, a meeting of the directors of the Trust Company was held at which a resolution was adopted, the pertinent portions of which were as follows:

*Resolved,* That it is the unanimous judgment of the Board that the merger of this Company with the Home Savings Bank in the manner and form provided in the proposed agreement between the stockholders of the Home Savings Bank, the trustees named in said agreement, and this Company, which said proposed agreement has been submitted to this Board by its Executive Committee, will be of great benefit to this Company, and ought, in the best interests of this Company, to be executed;

*Resolved,* That the officers of the Company be, and they hereby are authorized and directed to execute said agreement on behalf of this Company;

*Resolved,* further, that * * * a special meeting of the stockholders is hereby directed to be called, * * * on the 14th day of April, 1919, * * * to consider a proposal to increase the capital stock of this Company from three million dollars to three million four hundred thousand dollars with the object and for the purposes stated in the proposed agreement above set forth; to consider and, if in the judgment of the stockholders such action ought to be taken, to approve and ratify the agreement dated the 18th day of March, 1919, above set forth, executed by the officers of the Company, pursuant to the direction contained in these resolutions; and further to consider and adopt such other and further resolutions as may be desirable or expedient in effecting the object and purposes of said agreement; * * *.

On April 15, 1919, a meeting of the stockholders of the Trust Company was held for the purpose of considering the agreement hereinbefore mentioned and the action of the board of directors relative thereto. At this meeting the stockholders approved and ratified the action of the board of directors and the following resolution was adopted:

* * * Resolved, that in order to provide capital in amount sufficient and proper to carry into effect the agreement signed on the 18th day of March, 1919, by the stockholders of the Home Savings Bank, the Home Savings Bank, B. Francis Saul, James F. Shea, and Howard Moran, as trustees, and the American Security & Trust Company, that the capital stock of this company be increased from its present amount of three million dollars ($3,000,000) to three million four hundred thousand dollars ($3,400,000), said increase to consist of four thousand (4000) shares of the par value of $100 each.

Resolved, that the stockholders of this Company do hereby authorize the said increase in the capital stock of this Company from three million dollars, consisting of thirty thousand shares of the par value of $100 each to three million four hundred thousand dollars, consisting of thirty four thousand shares of the par value of $100 each.

Resolved, that the said four thousand shares of stock when issued shall be issued to the trustees named in the above mentioned agreement to carry out the object and purposes of said agreement, upon the payment to this Company of the sum of four hundred thousand dollars ($400,000).

*       *       *       *       *       *       *

The stock of the Bank was not quoted on any stock exchange. The bid price for this stock on the Washington Stock Exchange was $420 a share for 10 shares in January, 1919, and during the period from January to March 28, 1919, there were offers made through the Washington Stock Exchange to purchase the Bank stock at $420 a share. Between the date of the Trust Company's offer to acquire the assets and stock of the Bank and before the transaction was consummated the vice president of the Bank purchased from the Bank's president five shares of stock at $460 a share.

Between January 10 and April 16, 1919, the following sales of the Trust Company's stock were made on the Washington Stock Exchange:

| Date | Number of shares | At | Date | Number of shares | At |
|---|---|---|---|---|---|
| 1919 | | | 1919 | | |
| Jan. 10 | 10 | $221 | Mar. 26 | 10 | $233 |
| 20 | 15 | 222 | 28 | 12 | 234 |
| Feb. 8 | 20 | 222 | 28 | 6 | 234 |
| Mar. 13 | 10 | 221 | Apr. 1 | 2 | 236 |
| 15 | 8 | 220 | 16 | 5 | 237 |
| 24 | 10 | 233 | | | |

On May 10, 1919, the Trust Company's stock sold for $239 a share. On May 15, five shares were sold at $240; on June 5, ten shares at $243, and on June 10, two shares at $239.

The terms of the agreement were carried out and the transaction, as consummated at the close of business on April 19, 1919, was executed in detail as follows:

The transfer, assignment and conveyance of all the assets of the Bank to the Trust Company, the assumption by the Trust Company of the Bank's liabilities, the issuance to and the receipt by the trustees on behalf of the stockholders of the Bank of a check issued by the Trust Company for $400,000, the delivery to the Trust Company of the 1,000 shares of the Bank stock by the trustees, the deposit by the trustees of the check for $400,000 in the Riggs National Bank to the credit of their account, the drawing of a check on this account by the trustees for $400,000 payable to the Trust Company, and the issuance and delivery by the Trust Company to the trustees for the stockholders of the Bank of a certificate for 4,000 shares of the Trust Company stock, the same being endorsed by the trustees and returned to the Trust Company with instructions to issue certificates to each of the former stockholders of the Bank. Pursuant thereto, each of the former stockholders of the Bank received a certificate for four shares of Trust Company stock for each share of Bank stock formerly owned by him.

It was necessary for the Trust Company, being a District of Columbia corporation, to obtain a certificate from the Comptroller of the Currency that its increased capital stock of $400,000 had been paid in. In a letter dated April 21, 1919, the Trust Company notified the Comptroller of the authorization and issuance of the $400,000 increased capital stock, and furnished him with a copy of the minutes of the meeting of its stockholders held April 14, 1919, in which was incorporated in full the agreement of March 18, 1919. On April 22, 1919, the Comptroller of the Currency issued a certificate that the $400,000 of stock had been issued as required by law, as follows:

Whereas, satisfactory evidence has been transmitted to the Comptroller of the Currency that the capital stock of the American Security and Trust Company, located in the City of Washington, District of Columbia, has been increased in the sum of Four Hundred Thousand Dollars ($400,000), pursuant to the provisions of the Code of Law of the District of Columbia, and that the whole amount of such increase has been paid in, and that the paid-up capital stock of said company now amounts to the sum of Three Million Four Hundred Thousand Dollars ($3,400,000) ;

Now, it is hereby certified, that the capital stock of the American Security and Trust Company has been increased in the sum of Four Hundred Thousand Dollars ($400,000) ; that said increase of capital has been paid in as a part of the capital stock; and that the said increase of capital is approved by the Acting Comptroller of the Currency.

In witness whereof, I hereunto affix my official signature and seal of office.

Each of the stockholders determined the profit or loss upon the sale of the Bank stock as the difference between the cost, or March 1, 1913, value thereof, and the sales price of $400 a share. The Commissioner held that the transaction was an exchange of stock for stock, within the meaning of section 202 (b) of the Revenue Act of 1918, and determined the fair market value of the Trust Company's stock to have been $235 a share, resulting in the deficiencies hereinbefore mentioned.

### OPINION.

LITTLETON : Section 202 of the Revenue Act of 1918 imposes a tax upon the gain derived either through a sale of stock, or through an exchange of stock for stock. In the former case it provided that the basis should be the difference between the value on March 1, 1913, and the sales price, if acquired prior thereto, and, if acquired on or after that date, the cost thereof and the sales price, and, in the latter, the difference between the par value of the stock exchanged and that received should the par value of the stock received be in excess of the cost or March 1, 1913, value of the stock exchanged. What should be considered a sale and what an exchange was left to the courts to decide under the facts in each particular case.

The facts in these appeals show that each of the Bank stockholders agreed first to sell his bank stock and, second, to purchase four shares of the Trust Company's stock. Under these circumstances, the two transactions can not be combined for the purpose of determining a gain or loss to the Bank stockholders upon the basis of an exchange of stock for stock. Counsel for the Commissioner argued that—

It is perfectly plain that the ultimate result desired by all parties to the contract was a merger of the two institutions upon the basis of an exchange of four shares for one. It is apparent that without the circumstance of the banking laws the contract would have been shortened by the omission of the part relating to the payment of money. The only effect of the addition of the part relating to the money payment was to provide that a check should be drawn to trustees for the drawer, who should then return it to the drawer. This addition is purely a matter of form. If it made any change it was a change of form only with the real substance of the contract left undisturbed.

It is a general rule of construction that where a contract is made in performance of a statutory obligation and is susceptible of two interpretations, that construction will be given which is in accord with, and in furtherance of, the statutory obligation in question.

Section 719, subchapter XI of chapter XVIII of the Code of Law of the District of Columbia, entitled "Trust, Loan, Mortgage, and certain other corporations" provides:

* * * That no corporation created and organized under the provisions hereof * * * shall be authorized to transact the business of a trust company, or any business of a fiduciary character, until it shall have filed with the Comptroller of Currency a copy of its certificate of organization and charter, and shall have obtained from him and filed the same for record with the said recorder of deeds, a certificate that the said capital stock of said company has been paid in and * * *.

Section 728 further provides in part:

The capital stock of every such company shall be at least one million dollars, and at least fifty per centum thereof must be paid in, in cash or by the transfer of assets as hereinafter provided in section seven hundred and thirty-five of this subchapter, before any such company shall be entitled to transact business as a corporation, * * *.

Section 735, entitled "Stock to be paid up in money only," declares:

Nothing but money shall be considered as payment of any part of the capital stock, except that in the case of any company now doing business in the District of Columbia in any of the classes herein provided for, or under any act of Congress, or by virtue of the laws of any of the States, and which company has actually received full payment in money of at least fifty per centum of the capital stock required by this act, * * * all the assets or property may be received and considered as money at a value to be appraised and fixed by the Comptroller of the Currency: *Provided*, That all such assets and property are also transferred to and are thereafter owned by the company organized under this act.

Section 743, entitled "Increase of Capital Stock," reads as follows:

Any corporation which may be formed under this subchapter may increase its capital stock by complying with the provisions of this subchapter to any amount which may be deemed sufficient and proper for the purpose of the corporation.

It appears from the foregoing provisions of the Code of the District of Columbia that the Trust Company could not have issued its stock for the stock of the Bank in merging the two institutions. In legal effect, the payment by the Trust Company to the trustees of the stockholders of the Bank of $400 a share for the Bank stock was equivalent to the Trust Company having paid that amount to each stockholder and the stockholder having then paid back to the Trust Company the amount received by him for four shares of the Trust Company stock for each share of Bank stock owned by him. The fact that the stockholders of the Bank agreed to purchase at par the stock of the Trust Company with the money received in payment for the Bank stock held by them did not make the transaction an exchange of stock for stock, within the meaning of the statute. Each step in the transaction was one of substance and not of mere form, and the issue must be determined by what was actually done rather than the effect of what was done. In the *Appeal of Anna M. Harkness*, 1 B. T. A., 127, the Board said:

It seems to us to be fundamentally unsound to determine income tax liability by what might have taken place rather than by what actually occurred. Even though the practical effect may be the same in either case, the resulting tax liability may be quite different.

Strict compliance with acts of Congress relating to the issuing of stock by Trust Companies organized under the laws of the District of Columbia can not be regarded as a matter of form for the purpose of bringing a transaction within a particular provision of the Revenue Act inconsistent with such congressional enactments. The $400 a share, when received by the trustees for the Bank stockholders, was deposited in the Riggs National Bank and the relation of debtor and creditor existed until the trustees, acting for the Bank stockholders, purchased 4,000 shares of Trust Company stock. In the *Appeal of Edward A. Langenbach*, 2 B. T. A. 777, the Board said:

Here the corporation declared and the stockholder received a *cash* dividend, which, were it not for his voluntary contract, he had under his complete dominion. At the moment of its receipt he realized income, and what he did with it thereafter, irrespective of how soon, can not change its character at that time. *Appeal of Regal Shoe Co.*, 1 B. T. A. 896; *Appeal of E. C. Huffman*, 1 B. T. A. 52.

It is our opinion, therefore, that the taxpayer can not escape tax because the amounts received were incidental to the reorganization.

Neither the fact that the Bank stockholders had agreed to purchase the stock of the Trust Company, nor the fact that the purchase by them of the Trust Company's stock was near in point of time to the receipt of the $400 a share, changes the character of the transaction. In this respect this appeal is essentially different from the case of *United States* v. *Mellon*, 281 Fed. 645, in which the corporation did not intend to pay the cash dividend and was without funds with which to do so. Had the facts in that case shown, as they do here, that the corporation possessed ample funds with which to pay the dividend declared and had, in fact, paid it, and that the stockholders had afterwards under the arrangement purchased certain of its stock, the court doubtless would have held that the dividend was income. Nor is this appeal parallel to the *Appeals of Theresa Zellerbach and Isadore Zellerbach*, 2 B. T. A. 1076, in which the Board held that the dividend declared by the corporation of which the taxpayers were stockholders, and which they did not actually receive but instead received additional stock, was not income. The facts in that case show substantially that a dividend was declared but that, under an existing arrangement, stock was issued therefor instead of cash being paid, that this was in accordance with the understanding that no money should be distributed to the stockholders or taken out of the business, and that they should receive only a stock dividend—one share for each three shares held by them.

Although the Board is of the opinion that this transaction was a sale of stock by these taxpayers, it is not convinced that the profit realized by the stockholders of the Bank was the difference between the cost, or March 1, 1913, value of their stock, and $400 a share. Under the terms of the agreement hereinbefore referred to, the Bank transferred its business and assets to the Trust Company in consideration of the assumption by the Trust Company of the Bank's liabilities other than its liability to stockholders. Under this contract the consideration passing from the Trust Company to each Bank stockholder for his Bank stock was $400 a share and the right to subscribe for four shares of the Trust Company stock at $100 a share. Between January 1, 1919, and March 18, 1919, the Trust Company's stock was selling on the market at prices ranging from $220 a share to $222 a share. Between March 24 and June 10, 1919, the stock of the Trust Company was sold on the exchange at prices ranging from $233 a share to $243 a share. The right of each Bank stockholder to purchase four shares of the Trust Company's stock at $100 a share was a part of the consideration which the Trust Company agreed to pay for the Bank's stock, and the value of that right should be considered in measuring the profit realized by the Bank stockholders to the same extent as if it had been cash. The amount received by the Bank stockholders for their stock was, therefore,

$400 a share, plus the value of the right to subscribe for four shares of the Trust Company's stock at par.

Under the provisions of the contract and under all of the evidence submitted, the Board is of the opinion that the fair market price or value of the right received by each Bank stockholder to subscribe to the Trust Company's stock at par was $120 a share. The result therefore is that the price received by each Bank stockholder for each share of Bank stock sold was $400, plus $480, the value of the right to subscribe for four shares of the Trust Company's stock, or $880 a share. This amount, less the cost or March 1, 1913, value of the Bank stock, which is not in dispute, is the proper measure of the profit per share of the Bank stock to each of these taxpayers.

*Order of redetermination will be entered on 15 days' notice, under Rule 50.*