*645 OPINION.
Littleton
: Section 202 of the Revenue Act of 1918 imposes a tax upon the gain derived either through a sale of stock, or through an exchange of stock for stock. In the former case it provided that the basis should be the difference between the value on March 1, 1913, and the sales price, if acquired prior thereto, and, if acquired on or after that date, the cost thereof and the sales price, and, in the latter, the difference between the par value of the stock exchanged and that received should the par value of the stock received be in excess of the cost or March 1, 1913, value of the stock exchanged. What should be considered a sale and what an exchange was left to the courts to decide under the facts in each particular case.
*646 The facts in these appeals show that each of the Bank stockholders agreed first to sell his bank stock and, second, to purchase four shares of the Trust Company’s stock. Under- these circumstances, the two transactions can not be combined for the purpose of determining a gain or loss to the Bank stockholders upon the basis of an exchange of stock for stock. Counsel for the Commissioner argued that—
It is perfectly plain that (he ultimate result desired by all parties to the contract was a merger of the two institutions upon the basis of an exchange of four shares for one. It is apparent that without the circumstance of the banking laws the contract would have been shortened by the omission of the part relating to the payment of money. The only effect of the addition of the part relating to the money payment was to provide that a check should be drawn to trustees for the drawer, who should then return it to the drawer. This addition is purely a matter of form. If it made any change it was a change of form only with the real substance of the contract left undisturbed.
It is a general rule of construction'that where a contract is made in performance of a statutory obligation and is susceptible of two interpretations, that construction will be given which is in accord with, and in furtherance of, the statutory obligation in question.
Section 719. subchapter xi of chapter xvra of the Code of Law of the District of Columbia, entitled “Trust, Loan, Mortgage, and certain other corporations ” provides:
* * * That no corporation created and organized under the provisions hereof * * * shall be authorized to transact the business of a trust company, or any business of a fiduciary character, until it shall have filed with the Comptroller of Currency a copy of its certificate of organization and charter, and shall have obtained from him and filed the same for record with the said recorder of deeds, a certificate that the said capital stock of said company has been paid in and * * *.
Section 728 further provides in part:
The capital stock of every such company shall be at least one million dollars, and at least fifty per centum thereof must be paid in, in cash or by the transfer of assets as hereinafter provided in section seven hundred and thirty-five of this subchapter, before any such company shall be entitled to transact business as a corporation, * * *.
Section 735, entitled “Stock to be paid up in money only,”-declares : ' :
Nothing but money shall'be considered as payment of any part of the capital stock, except that in the case of any company now doing business in the District of Columbia in any of the classes herein provided for, or under any act of Congress, or by virtue of the laws of any -of the States, and which company has actually received full payment in money of at least fifty per centum of the capital stock required by this act, * * * all the assets or. property may be received and considered as money at a value to be appraised and fixed by the Comptroller of the Currency: Provided, That all such assets and property are also transferred to and are thereafter owned by the company organized under this act.
*647 Section 743, entitled “Increase of Capital Stock,” reads as follows ;
Any corporation wliieli may be formed under this subchapter may increase its capital stock by complying with the provisions of this subchapter to any amount which may be deemed sufficient and proper for the purpose of the corporation.
It appears from the foregoing provisions of the Code of the District of Columbia that the Trust Company could not have issued its stock for the stock of the Bank in merging the two institutions. In legal effect, the payment by the Trust Company to the trustees of the stockholders of the Bank of $400 a share for the Bank stock was equivalent to the Trust Company having paid that amount to each stockholder and the stockholder having then paid back to the Trust Company the amount received by him for four shares of the Trust Company stock for each share of Bank stock owned by him. The fact that the stockholders of the Bank agreed to purchase at par the stock of the Trust, Company with- the money received in payment for the Bank stock held by them did not make the transaction an exchange of stock for stock, within the meaning of the statute. Each step in the transaction, was one of substance and not of mere form, and the issue must be determined by what was actually done rather than the effect of what, was done. In the Appeal of Anna M. Harkness, 1 B. T. A., 127, the Board said:
It seems to us to be fundamentally unsound to determine income tax liability by wliat might have taken place rather than by what actually occurred. Even though the practical effect may be the same in either case, the resulting tax liability may be quite different.
Strict compliance with acts of Congress relating to. the issuing of stock by Trust Companies organized under the laws of the District of Columbia can not be regarded as a matter of form for the purpose of. bringing a transaction within a particular provision of the Revenue Act inconsistent with such congressional enactments. The $400 a share, when received by the trustees for the Bank stockholders, was deposited in the Riggs National Bank and the relation of debtor and creditor existed until the trustees, acting for the Bank stockholders, purchased 4,000 shares of Trust Company stock. In the Appeal of Edward A. Langenbach, 2 B. T. A. 777, the Board said:
Here the corporation declared and the stockholder received a cash dividend, which, were it not for his voluntary contract, he had under his complete dominion. At thé moment of its receipt he realized income, and what he did with it thereafter, irrespective of how soon, can not change its character at that time. Appeal of Regal Shoe Co., 1 B. T. A. 896; Appeal of E. C. Huffman, 1 B. T. A. 52.
It is our opinion, therefore, that the taxpayer can not' escape tax because the amounts received were incidental to the reorganization.
*648 Neither the fact that the Bank stockholders had agreed to purchase the stock of the Trust Company, nor the fact that the purchase by them of the Trust Company’s stock was near in point of time to the receipt of the $400 a share, changes the character of the transaction. In this respect this appeal is essentially different from the case of United States v. Mellon, 281 Fed. 645, in which the corporation did not intend to pay the cash dividend and was without funds with which to do so. Had the facts in that case shown, as they do here, that the corporation possessed ample funds with which to pay the dividend declared and had, in fact, paid it, and that the stockholders had afterwards under the arrangement purchased certain of its stock, the court doubtless would have held that the dividend was income. Nor is this appeal parallel to the Appeals of Theresa Zellerbach and Isadore Zellerbach, 2 B. T. A. 1076, in which the Board held that the dividend declared by the corporation of which the taxpayers were stockholders, and which they did not actually receive but instead received additional stock, was not income. The facts in that case-show substantially that a dividend was declared but that, under an existing arrangement, stock was issued therefor instead of cash being paid, that this was in accordance with the understanding that no money should be distributed to the stockholders or taken out of the business, and that they should receive only a stock dividend — one share for each three shares held by them.
Although the Board is of the opinion that this transaction was a sale of stock- by these taxpayers, it is not convinced that the profit realized by the stockholders of the Bank was the difference between the cost, or March 1, 1913, value of their stock, and .$400 a share. Under the terms of the agreement hereinbefore referred to, the Bank transferred its business and assets to the Trust Company in consideration of the assumption by the Trust Company of the Bank’s liabilities other than its liability to stockholders. Under this contract the consideration passing from the Trust Company to each Bank stockholder for his Bank stock was $400 a share and the right to subscribe for four shares of the Trust Company stock at $100 a share. Between January 1, 1919, and March 18, 1919, the Trust Company’s stock was selling on the market at prices ranging from $220 a share to $222 a share. Between March 24 and June 10, 1919, the stock of the Trust Company was sold on the exchange at prices ranging from $233 a share to $243 a share. The right of each Bank stockholder to purchase four shares of the Trust Company’s stock at $100 a share was a part of the consideration which the Trust Company agreed to pay for the Bank’s stock, and the value of that right should be considered in measuring the profit realized by the Bank stockholders to the same extent as if it had been cash. The amount received by the Bank stockholders for their stock was, therefore, *649 $400 a share, plus the lvalue of the right to subscribe for four shares of the Trust Company’s stock at par.
Under the provisions of the contract and under all of the evidence submitted, the Board is of the opinion that the fair market price or value of the right received by each Bank stockholder to subscribe to the Trust Company’s stock at par was $120 a share. The result therefore is that the price received by each Bank stockholder for each share of Bank stock sold was $400, plus $480, the value of the right to subscribe for four shares of the Trust Company’s stock, or $880 a share. This amount, less the cost or March 1, 1913, value of the Bank stock, which is not in dispute, is the proper measure of the profit per share of the Bank stock to each of these taxpayers.

Order of redetermination will be entered on 15 days' notioe, under Bule 50.